**KENTUCKY BAR ASSOCIATION,**
Complainant,

v.

**James T. HARRIS, Respondent.**

No. 93–SC–541–KB.

Supreme Court of Kentucky.

April 21, 1994.

**OPINION AND ORDER**

Respondent, James T. Harris, was charged with three counts of unethical conduct by the Inquiry Tribunal on July 28, 1992. The first count charged that he had violated Disciplinary Rules 6–101(A)(2) and (3), which prohibit a lawyer from handling a legal matter without adequate preparation and neglecting a legal matter entrusted to him. The second count charged a violation of Disciplinary Rules 1–102(A)(4) and (5), which proscribe a lawyer from engaging in conduct involving deceit, dishonesty, fraud or misrepresentation, or conduct that is prejudicial to the administration of justice. The third count charged a violation of Disciplinary Rule 9–102(B)(4), which requires a lawyer to promptly pay to the client funds in the possession of the lawyer which the client is entitled to receive.

Respondent generally denied the charges. The matter was referred to a Trial Commissioner, who held an evidentiary hearing on December 17, 1992. The Commissioner reported to the Board of Governor's on February 5, 1993. On June 14, 1993, the Board of Governor's heard oral arguments, and after consideration of the record, issued its Findings of Fact, Conclusions of Law and Recommendations on July 1, 1993. Therein, they found Respondent guilty of count one, by a fourteen-to-one vote; count three, by a fifteen-to-zero vote; and not guilty of count two, by a four-to-eleven vote. The recommended penalty, by nine members of the Board, was suspension for one year. This

Court entered its notice of review on September 22, 1993.

After the notice of review was entered, but before the filing of briefs, the Bar Association filed a motion to remand for the Board to reconsider the penalty in light of evidence of additional prior disciplinary matters. Respondent objected, and this Court, by order of November 19, 1993, requested additional briefs on the issues presented by the remand motion.

■ This Court has the power to remand a matter to the Board of Governor's when appropriate. SCR 3.370(8); and SCR 3.400; *see also Kentucky Bar Association v. Ball,* Ky., 501 S.W.2d 253, 255 (1971); and *Kentucky State Bar Association v. Ball,* Ky., 499 S.W.2d 290, 291 (1971). However, in this case remand is not appropriate. The evidence which the Bar Association wants the Board of Governors to consider was clearly discoverable by the exercise of reasonable diligence while the case was still before the Board, since the evidence was in the Board's records. As such, it is inappropriate to remand at this time. *See* SCR 3.400. As a result of this disposition, we need not reach the issue of whether private admonitions can properly be considered by the Board of Governors.

Another preliminary issue concerns Respondent's attack upon the fact findings made by the trial commissioner. Specifically, it is asserted that the trial commissioner failed to make adequate findings of fact. The record reveals that findings of fact were made, but only as to the basic facts without any real attempt to assess credibility or determine any inferences to be drawn from the evidence. The Board accepted the facts as found by the Trial Commissioner, and went on to make decisions regarding the credibility of witnesses, the weight of the evidence, and the inferences to be drawn therefrom. A review of the record demonstrates that the Board's findings are supported by substantial evidence. Consequently, we conclude that the merits of the charges are properly before us. SCR 3.360(1); SCR 3.370(4) and (8).

The charges arose from Respondent's representation of Glenda Prater (now Flack). Although Respondent represented Prater on a number of matters, including a worker's compensation claim and regarding certain issues arising post-decree in her divorce action, the charges stem from his representation of her in a medical malpractice action.

The medical malpractice action was filed on March 25, 1987. The court's file, and the available portions of Respondent's own file, reflect that no formal discovery, nor any other action to prosecute the claim, was taken. Other than Respondent's vague assertions that he had consulted various experts and other lawyers, variously advanced in his motions to seek additional time to prove the case and at the evidentiary hearing, there is no evidence to indicate that he took any action with regard to the need to obtain an expert. Thereafter, on August 22, 1988, a show cause order for failure to prosecute was entered pursuant to CR 77.02(2). Subsequently, no action having been taken, the claim was dismissed on December 2, 1988. Respondent was able to secure an order setting aside the dismissal on March 13, 1989, and to obtain an additional sixty days to produce an expert witness as to both a deviation from the standard of care and as to causation. Again no action was taken, which resulted in the case being dismissed with prejudice on September 15, 1989. Prater was not informed of the dismissal until November 13, 1989.

At the conclusion of a real estate closing connected with Prater's divorce, on September 15, 1989, Respondent obtained a $2,000 check from her which she believed was for the retention of an expert witness in connection with the medical malpractice case. Respondent asserted at the hearing that he requested $1,400 as fee for all his work in the post-decree proceedings, and that Prater tendered the $2,000 check in response, which was a "surprise" to him. He asserted that the excess above the requested fee was all that was agreed to be applied to any fee for an expert. Thereafter, Respondent continued to tell Prater that he was looking for an expert, and the case could be reopened if one was found. No expert was retained, nor was any money refunded until Prater requested a refund on December 10, 1990. Respondent

did refund $600 through two checks in the amount of $300 each.

While the inferences to be drawn from the evidence are sharply disputed by the Bar Association and Respondent, it is clear from the record that Respondent did little to prosecute Prater's malpractice claim, and even less to document what he says he did. Additionally, the record is equally clear that Respondent held onto Prater's funds, advanced for the expert, despite any need to do so once the malpractice action was dismissed. As a result, we must conclude that Respondent has violated Disciplinary Rules 6–101(A)(2) and (3) by handling a legal matter without adequate preparation and neglecting a legal matter entrusted to him; and violated Disciplinary Rule 9–102(B)(4) by failing to promptly pay to Prater funds in his possession which she was entitled to receive.

This is not Respondent's first brush with disciplinary proceedings. He has received two previous public admonitions. *See Kentucky Bar Association v. Harris,* Ky., 717 S.W.2d 837 (1986); and *Kentucky Bar Association v. Harris,* Ky., 809 S.W.2d 851 (1991). The latter admonition bears striking similarity to this case, since it also involved inadequate preparation and neglect of a legal matter entrusted to him arising from a case which Respondent failed adequately to pursue. The Board of Governors recommended that Respondent's license be suspended for one year, which recommendation appears appropriate.

Therefore, it is ordered that the license to practice law of Respondent, James T. Harris, be suspended for one year. It is further ordered that:

1. Pursuant to SCR 3.390, Respondent, James T. Harris, is hereby ordered to provide notice to any clients he is currently representing of his inability to provide further legal services, to notify all courts in which he has matters pending of his suspension, and to provide the Director of the Kentucky Bar Association with a copy of all such letters.

2. Pursuant to SCR 3.450 Respondent, James T. Harris, shall pay to the Kentucky Bar Association all costs of this proceeding.

All sitting. All concur.

ENTERED: April 21, 1994.

/s/   Robert F. Stephens
Chief Justice