489 S.E.2d 750

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Robert W. FRIEND, a Member of the West Virginia State Bar, Respondent.**

**No. 23877.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided June 19, 1997.

---

Sherri D. Goodman, Chief Disciplinary Counsel, Charleston, for Complainant.

James F. Companion, James P. Mazzone, Robert G. McCoid, Schrader, Byrd, Companion & Gurley, Wheeling, for Respondent.

PER CURIAM:

This disciplinary proceeding was instituted by the complainant, Office of Disciplinary Counsel (hereinafter "ODC") of the West Virginia State Bar, against the respondent, Robert W. Friend, a member of the Bar. The Lawyer Disciplinary Board (hereinafter the "Board") found that Mr. Friend (1) failed to act with reasonable diligence and promptness in representing a client, and (2) he charged an unreasonable fee in representing the client.[1] The Board recommends that this Court admonish Mr. Friend, require him to perform 120 hours of community service, order him to make restitution to the client in the amount of $396,773.10 (with 10% interest from May 4, 1994), and require him to pay the costs of this proceeding. Based upon our review of the evidence, we find that Mr. Friend is guilty of ethical violations.

**I.**

Mr. Friend and ODC stipulated to the facts of this case and agreed upon the sanctions recommended by the Board. The proceeding against Mr. Friend involved his representation of the executrix of the estate of Fred B. Sayre, deceased.

On December 2, 1986 Mr. Sayre died testate. The executrix of his estate, Imogene Williams, retained Mr. Friend on December 19, 1986 to represent her in her fiduciary capacity. The fee arrangement for representing Ms. Williams included an $80.00 hourly rate and reimbursement for all ex-

---

1. This case was heard by a Hearing Panel Sub- committee of the Board.

penses.[2] Mr. Friend had complete control of all matters pertaining to the estate. The initial appraisement of the estate prepared by Mr. Friend listed the estate's personal assets in the amount of $461,690.28. The real estate was valued at $264,830.00.

From the period January 1987 through December 1993, Mr. Friend billed and received from the estate a total of $453,283.04 in attorney fees and $58,565.00 from trusts set up by the estate. In 1994, the estate and heirs of the estate, sued Mr. Friend. After finding that he overcharged the estate, a circuit court entered a judgment order against Mr. Friend. The judgment required him to reimburse the estate $396,773.10, plus 10% interest from May 4, 1994 until paid.[3] The Board found that the amount of work performed by Mr. Friend and the results he attained failed to justify the fees he charged the estate. This conduct was deemed a violation of Rule 1.5(a) of the Rules of Professional Conduct (R.P.C.).[4]

The record illustrates that Mr. Friend failed to file the required annual settlements for the estate in 1988, 1989, 1991, and 1992. Mr. Friend filed the annual estate settlements for the latter four years on March 30, 1993. It was determined that Mr. Friend failed to keep the beneficiaries informed regarding the status of the estate. He also failed to keep proper records apportioning rental income and expenses for trust property of the estate. It was also determined that Mr. Friend allowed Ms. Williams to be paid her fiduciary commission, in violation of statutory law that prohibits such payment if an

annual settlement has not been filed timely. The Board deemed the above conduct to be a violation of R.P.C., Rule 1.3.[5]

The parties stipulated and the Board found that a fair sanction for Mr. Friend's violation of Rule 1.3 and Rule 1.5(a) would be:

(1) An admonishment;

(2) Community service whereby Mr. Friend would accept six cases from the West Virginia Legal Services Plan, or a comparable organization, on a pro bono basis over a three year period. If representation in six cases does not require at least a total of 120 hours of work, Mr. Friend would accept additional cases until he expended 120 hours. Mr. Friend would be obligated to complete all pro bono referrals he had after expending 120 hours. Mr. Friend would have to submit an itemized statement to ODC each year setting forth his time expended on each case;

(3) Restitution to the estate in the amount of $396,773.10, plus 10% interest from May 4, 1994. Restitution would be made pursuant to a reasonable payment plan submitted by Mr. Friend and approved by ODC; and

(4) Payment of expenses of the Board and ODC in this matter, which total $1,917.69.

## II.

■ We begin by setting out the standard of review applicable to this matter. It was pointed out in syllabus point 3 of *Lawyer*

---

2. Reimbursement for expenses included mileage at $.35 and copying charges at $.25 per copy.

3. The record indicates that the circuit court determined that Mr. Friend was entitled to $118,000.00 for his legal services to the estate.

4. Rule 1.5(a) provides:
   (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
   (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

5. Rule 1.3 provides:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

*Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995) that:

A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record. Syl. pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). Syllabus Point 2, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

*See* Syl. Pt. 2, *Committee on Legal Ethics of the West Virginia State Bar v. Keenan,* 189 W.Va. 37, 427 S.E.2d 471 (1993) (" 'Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the [Board] ... are to be given substantial consideration.' Syllabus Point 3, in part, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980)"). In spite of the deference in which we review disciplinary proceedings, we have consistently held that " '"[t]his Court is the final arbiter of legal ethic problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syl. Point 3, *Committee on Legal Ethics v. Blair,* [174] W.Va. [494], 327 S.E.2d 671 (1984).' Syl. pt. 1, *Committee on Legal Ethics v. Charonis,* 184 W.Va. 268, 400 S.E.2d 276 (1990).' Syl. pt. 1, *Committee on Legal Ethics v. Ikner,* 190 W.Va. 433, 438 S.E.2d 613 (1993)." Syl. pt. 7, *Committee on Legal Ethics v. Karl,* 192 W.Va. 23, 449 S.E.2d 277 (1994).

■ We have previously held that " '[t]he [Rules of Professional Conduct] state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.' Syllabus Point 3, *Committee on Legal Ethics v. Tatterson,* 173 W.Va. 613, 319 S.E.2d 381 (1984)." Syllabus Point 9, *Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993). In syllabus point 2 of *Committee on Legal Ethics of the West Virginia State Bar v. White,* 189 W.Va. 135, 428 S.E.2d 556 (1993) we stated that " '"[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).' Syllabus Point 5, *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989)."

In the matter *sub judice* both parties urge this Court to adopt the recommendations of the Board. As a mitigating factor, the parties assert that Mr. Friend has never previously been formally disciplined. The parties also note that the proposed sanctions serve as a deterrent and are comparable to sanctions imposed in other fee cases. *See Committee on Legal Ethics v. Gallaher,* 180 W.Va. 332, 376 S.E.2d 346 (1988); *Committee on Legal Ethics v. Coleman,* 180 W.Va. 493, 377 S.E.2d 485 (1988).

■ After an independent review of the record, we find that the Board's factual findings are supported by clear and convincing evidence. Upon careful consideration of the facts and the serious nature of Mr. Friend's ethical violations, we find that his conduct must be sanctioned. However, the Board's recommended sanctions are not appropriate under the facts and circumstances of this case. Rule 3.16 of the Rules of Lawyer Disciplinary Procedure states:

In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the law-

yer's misconduct; and (4) the existence of any aggravating or mitigating factors.

█ Once the above factors are applied to the case at bar, we find that the Board failed to properly consider Mr. Friend's actions. "We endeavor to make an individualized assessment of the sanction rather than follow a punishment schedule." *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 36, 464 S.E.2d 181, 190 (1995). Accordingly, the most effective deterrent sanctions to be imposed in this case are:

1. Mr. Friend's license to practice law is immediately suspended for a period of two years; however, Mr. Friend may seek reinstatement at any time during the two year suspension provided he has paid, in full, all fees and expenses to the Sayre estate as are hereinafter described;

2. Mr. Friend must pay the judgment against him in the amount of $396,773.10, plus interest at the rate of 10% from May 4, 1994 until paid in full;

3. Mr. Friend must return to the estate and trust of Fred B. Sayre all fees and expenses paid to him. The fees and expenses were determined by the circuit court to be $118,000.00;

4. Mr. Friend must pay all costs of this proceeding;

5. Mr. Friend must comply with the appropriate continuing legal education requirements prior to reinstatement;

6. Mr. Friend, for a five-year period commencing from the time of reinstatement, must report all personal and business loans to disciplinary counsel, who will periodically track the status of such obligations with Mr. Friend's assistance;

█ 7. Mr. Friend must be supervised during his first two years of reinstatement by an attorney in good standing with the State Bar, subject to the approval of such attorney by the Subcommittee. This supervision is subject to the following additional conditions (a) that supervision be on a regular basis and preferably in a work relationship where the supervising attorney would have daily contact with Mr. Friend; (b) that during the two-year supervision period, Mr. Friend must handle all client funds through the trust account of the supervising attorney; (c) that the supervising attorney must agree to provide adequate supervision sufficient to be generally aware of the types and number of cases being handled by Mr. Friend and assure himself or herself that Mr. Friend's financial dealings are in proper order; (d) that the supervising attorney make monthly reports to chief disciplinary counsel attesting that he or she has had sufficient contact and consultation with Mr. Friend during the past month to feel confident in making representations to disciplinary counsel that Mr. Friend has conducted himself in an ethical and proper manner and in accordance with the requirements of the Board and the reasonable requests of disciplinary counsel.

█ Mr. Friend's conduct must be firmly addressed. The public trust in the legal profession is diminished by such undisciplined behavior. We touched upon the tragedy of such conduct in *Committee on Legal Ethics of West Virginia State Bar v. Tatterson*, 177 W.Va. 356, 365, 352 S.E.2d 107, 115–116 (1986) wherein we said:

> In our opinion, the unreasonableness of the respondent's fee and the circumstances under which it was imposed and obtained are indicative of a lack of consideration of the client's interests and an abuse of the respondent's professional relationship with her, all of which are hardly conducive to preserving the integrity of the legal profession and maintaining mutual respect and confidence between the members of the Bar and the society they serve. Quoting *In re St. John*, 43 A.D.2d 218, 222, 350 N.Y.S.2d 737, 740–41 (1974).

An attorney occupies a position of trust with regard to his or her client. As we expressed in *Committee on Legal Ethics v. White*, 176 W.Va. 753, 756, 349 S.E.2d 919, 922 (1986):

> There is ordinarily an inequality in the relationship between an attorney and client. The client comes to the attorney trusting in his expertise and honesty. He often accepts the attorney's representations without making any independent evaluation. For this reason, there is a higher obligation on an attorney to deal

with his client in financial matters in a forthright and honest manner.

We also said in syllabus point 2 of *Tatterson,* in part, that "[i]f an attorney's fee is grossly disproportionate to the services rendered and is charged to a client who lacks full information about all of the relevant circumstances, the fee is 'clearly excessive' ..., even though the client has consented to such fee." We believe the sanctions imposed upon Mr. Friend are necessary to repair the damage inflicted by Mr. Friend on his client and the damage inflicted by Mr. Friend on the integrity of the legal profession.

### III.

This Court finds that Mr. Friend violated the Rules of Professional Conduct. We, therefore, order that Mr. Friend be sanctioned as outlined herein.

Two year suspension, two year supervision upon reinstatement, full payment of outstanding judgment, restitution of fees to client estate, satisfaction of continuing legal education requirements, disclosure of personal and business loans for a five-year period, and payment of costs.