619 S.E.2d 172

## LAWYER DISCIPLINARY BOARD, Complainant,

v.

## J. Thomas HARDIN, a member of the West Virginia State Bar, Respondent.

### No. 31678.

Supreme Court of Appeals of West Virginia.

Submitted April 27, 2005.

Filed June 23, 2005.

Lawrence J. Lewis, Office of Disciplinary Counsel, Charleston, for Complainant.

Sherri D. Goodman, Esq., Charleston, for Respondent.

PER CURIAM:

This lawyer disciplinary proceeding was brought before the Court by the respondent J. Thomas Hardin, a Kentucky lawyer who is admitted to practice law in West Virginia. The respondent filed an objection to one of the West Virginia State Bar Lawyer Disciplinary Board Hearing Panel Subcommittee's ("the Panel") recommended sanctions—per-

manently barring the respondent from accepting medical malpractice lawsuits in West Virginia.

The respondent stipulated to violating the *West Virginia Rules of Professional Conduct*, and stipulated to Office of Disciplinary Counsel's ("ODC") recommended sanctions. The ODC's recommended sanctions did not include any restrictions relating to malpractice litigation.

The respondent objects to the additional sanction recommended by the Hearing Panel Subcommittee ("the Panel") relating to a permanent bar from medical malpractice cases. The respondent argues that the recommended sanction is too harsh, and that a less severe punishment could provide adequate discipline, deter other attorneys, and safeguard the public's confidence in the ethical conduct of attorneys.

We adopt the Hearing Panel Subcommittee's recommendations as modified.

I.

On February 2, 2004, the Lawyer Disciplinary Board Hearing Panel Subcommittee filed a "Statement of Charges" against the respondent J. Thomas Hardin,[1] based on the respondent's conduct in a 2001 medical malpractice action filed in Cabell County.

In the underlying medical malpractice action, the respondent consistently failed to appear at properly-noticed hearings before the circuit court. The respondent also failed to adequately follow the circuit court's orders regarding discovery issues. The circuit court twice held the respondent in contempt of court, twice ordered his conduct to be reported to the ODC, twice fined the respondent $500.00, and assessed the respondent $750.00 in attorney's fees.

As a result of the respondent's misconduct, the circuit court ultimately dismissed the respondent's client's lawsuit with prejudice.[2]

In response to the statement of charges filed against him, the respondent obtained

---

1. The respondent's offices are located in Inez, Kentucky. The respondent was admitted to the West Virginia Bar in 1986 and occasionally practices in various counties throughout southern West Virginia. The bulk of the respondent's practice is in Kentucky.

2. The dismissal of the lawsuit was not appealed.

counsel, who engaged in negotiations with the ODC. The respondent admitted to violating Rule 1.3 of the *West Virginia Rules of Professional Conduct* by not acting with diligence in responding to discovery requests; Rule 3.2 by failing to make reasonable efforts to expedite litigation; Rule 3.4(c) by knowingly disobeying the circuit court's orders; Rule 3.4(d) by failing to make a reasonably diligent effort to comply with discovery requests; and Rule 8.4(d) by acting in a way prejudicial to the administration of justice by not appearing for at least seven hearings, and by not paying the fines and attorneys' fees imposed by the Circuit Court of Cabell County.

The respondent and the ODC stipulated to a findings of facts, conclusions of law, and recommended discipline. The parties also stipulated to three mitigating factors: (1) the respondent had heretofore not been formally disciplined in Kentucky or West Virginia; (2) the respondent's misconduct resulted from poor office practices and poor judgment, rather than selfish or dishonest motives; and (3) the respondent expressed remorse for misconduct.

The discipline agreed to by the respondent and the ODC included a reprimand, pursuant to Rule 3.15(7) of the *Rules of Lawyer Disciplinary Procedure;* prompt payment of fines and attorneys fees owed, totaling $1,750.00; three additional hours of continuing legal education during the 2004–2006 reporting period, "specifically in office management;" and, payment of the costs of the disciplinary proceedings.

The Panel conducted a hearing on June 2, 2004. The respondent and the ODC presented evidence on mitigating and aggravating factors, as well as evidence on the appropriateness of sanctions. The Panel considered the evidence and the "Stipulations and Recommended Discipline" proffered to the Panel by the ODC and respondent and took the matter under advisement.

On June 30, 2004, the Panel issued a "Recommended Disposition." In its recommendation, the Panel adopted the "Stipulations and Recommended Discipline," and added a sanc-

tion to those stipulated to by the respondent and ODC. The Panel recommended that "the Respondent's practice of law in the State of West Virginia shall permanently exclude acceptance of medical malpractice suits."

Pursuant to Rule 3.11 of the *Rules of Lawyer Disciplinary Procedure,* the respondent filed with this Court his objection to the Panel's additional sanction that would permanently bar the respondent from accepting medical malpractice lawsuits within the State of West Virginia.[3] While the respondent admits to the seriousness of his actions, he argues that a permanent bar from accepting medical malpractice cases is too harsh, and the less extreme punishment agreed to by the respondent and the ODC would adequately punish the respondent, and serve other purposes for lawyer discipline.

## II.

"A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). While at all times, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984).

Under Rule 3.15 of the *Rules of Lawyer Disciplinary Procedure,* the following punishments may be imposed in a disciplinary

**3.** Under Rule 3.11, both the Office of Disciplinary Counsel and the Respondent may file an objection to the Hearing Panel Subcommittee's Disposition.

proceeding: (1) probation; (2) restitution; (3) limitation on the nature and extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

■ "Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure* enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998).

■ Lawyer disciplinary actions are designed to discipline lawyers who engaged in the practice of law and failed to meet the expected standards of the profession. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).

### III.

■ The respondent's conduct in failing to follow West Virginia court rules with respect to the practice of law, failure to appear for court hearings on numerous occasions, and failure to respond to court sanctions is unacceptable. His conduct has not only brought injury to his client, but also provides reason for the public to lessen their faith and confidence in the legal profession.

With the guidelines established by this Court in mind, we modify the recommendation of the Hearing Panel Subcommittee, and impose the following sanctions on the respondent. Pursuant to Rule 3.15 of the *Rules of Lawyer Disciplinary Procedure,* the Court (1) suspends the respondent's West Virginia law license for two years; (2) requires that in addition to the required twenty-four hours of continuing legal education ("CLE"), an additional three hours of CLE credits on medical malpractice law, an additional three hours of CLE credits on office management, and an additional three hours of CLE credits in West Virginia Civil Procedure; (3) requires that (if not paid) all circuit court fines and costs, and costs of this proceeding be paid forthwith; and (4) requires that, should the respondent resume practicing law in West Virginia after the two-year suspension, he shall be required to have local counsel on all cases for an additional two years.

These sanctions will properly punish the respondent, are sufficiently harsh to deter other attorneys from acting in a similar manner, and will serve as a safeguard for the public's faith in ethical standards of attorneys.

Recommendation Modified.