KENTUCKY BAR ASSOCIATION,
Movant,

v.

J. Thomas HARDIN, Respondent.

No. 2006–SC–000268–KB.

Supreme Court of Kentucky.

April 19, 2007.

As Modified April 25, 2007.

## OPINION AND ORDER
## OF RECIPROCAL
## DISCIPLINE

The Kentucky Bar Association (KBA) has moved this Court under SCR 3.435 to impose reciprocal discipline on J. Thomas Hardin, KBA No. 81516, whose last known bar roster address is KY Rt. 292; P.O. Box 1416; Inez, Kentucky 41221–1416. Hardin was admitted to the practice of law in Kentucky on April 26, 1986, and in West Virginia on November 6, 1986.

On September 13, 2005, the West Virginia Supreme Court of Appeals suspended Hardin from the practice of law for a period of two years, with conditions for reinstatement; notwithstanding the recommendation of the West Virginia Lawyer's Disciplinary Board that he be sanctioned with a Public Reprimand. *See Lawyer Disciplinary Board v. Hardin,* 217 W.Va. 659, 619 S.E.2d 172, 176 (2005).

The KBA now recommends that this Court impose a reciprocal two-year suspension upon Hardin in this jurisdiction. Under SCR 3.435, we ordered Hardin to show cause why reciprocal discipline should not be imposed. Hardin responded, through counsel, as did the KBA. Hardin's claim is that identical reciprocal discipline is not appropriate under SCR

3.435(4)(b) because the misconduct he was disciplined for in West Virginia warrants substantially different discipline under Kentucky law. Following our review of the parties' supplemental briefs, we agree that substantial evidence does exist to warrant the imposition of substantially different discipline in this case pursuant to SCR 3.435(4)(b).

## I. FACTUAL BACKGROUND.

Hardin filed a medical malpractice suit on behalf of a client in the Circuit Court of Cabell County, West Virginia. Over the course of the next year, the suit failed to progress because Hardin "consistently failed to appear at properly-noticed hearings before the circuit court" and "also failed to adequately follow the circuit court's orders regarding discovery issues." *Hardin,* 619 S.E.2d at 174 (factual summary of misconduct provided in West Virginia Supreme Court of Appeals opinion).[1] As a result, the trial court "twice held [Hardin] in contempt of court, twice ordered his conduct reported to the ODC [Office of Disciplinary Counsel], twice fined [Hardin] $500.00, and assessed [Hardin] $750.00 in attorney's fees" and, ultimately, dismissed the case, with prejudice. *Id.*

The only evidence before the tribunal in regard to Respondent's mental state noted, "that Respondent's conduct was grounded in neglect and poor office procedures, rather than an intentional misconduct." Moreover, the evidence indicated that "[t]he Respondent did not inflict injury to his client, because her case most likely would have been dismissed before trial, because they were unable to find an expert witness based upon the facts of the case." It further noted, "that Respondent's file indicated that he wrote to his client on more than one occasion asking whether she wanted him to file a Motion to Reinstate under rule 60(b) of the [West Virginia] rules of civil procedure, and he received no answer." Finally, the evidence acknowledged the presence of the following mitigating circumstances:

1. Respondent has never been *formally disciplined* in Kentucky or West Virginia.[2]

2. Respondent's conduct flowed from poor office practices and poor judgment, rather than from selfish or dishonest motive.

3. Respondent has expressed his remorse to the hearing panel sub committee and regrets that poor office practices caused problems in this disciplinary proceeding once the Statement of Charges was filed.

(Emphasis added).

This evidence led the West Virginia Lawyers Disciplinary Board to conclude, "he exercised poor judgment and made wrong decisions in dealing with consequences in failing to meet discovery deadlines and being unsuccessful in finding an expert witness."

The KBA filed a petition for reciprocal discipline in April 2006. Hardin, by counsel, responded and objected. Before us,

1. Hardin stipulated to more detailed findings of fact with West Virginia's disciplinary counsel, which we find to be accurately summarized by the West Virginia court.

2. In 1994, Respondent received a private admonition for failing to "complete [a] parental rights termination in a reasonably and prompt manner (April 1993–October 1994)."

The admonition notes, however, that "the inquiry tribunal is authorized to direct a private admonition to an attorney were the acts or course of conduct complained of are deemed a minor infraction of the applicable rules of attorney conduct." SCR 3.185. SCR 3.185 is, of course, titled, *"Informal* Admonition Procedure." (Emphasis added).

he has requested oral argument and the appointment of a trial commissioner to hold an evidentiary hearing on whether identical discipline is warranted.

We now decline to order an evidentiary hearing because the underlying facts were conclusively established by stipulation in the West Virginia disciplinary proceeding, and we are fully capable of determining the legal question of whether identical discipline is merited in Kentucky under these stipulated facts. We have ordered supplemental briefing by the parties concerning whether Kentucky law would require substantially different discipline, and we find these briefs to address fully the issues before us. So we conclude that oral argument would unnecessarily delay our resolution of this case.

## II. ANALYSIS.

■ In determining whether "the misconduct established" merits "substantially different discipline" in this jurisdiction, we have reviewed cases presented by the parties. Upon review of these cases, we have determined that a two-year suspension is not warranted for Hardin's misconduct.

■ Pursuit to Section 116 of the Kentucky Constitution, "the Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar." For this reason, we have never given a sister state "carte blanche" authority to exercise our constitutional disciplinary prerogatives within the confines of this Commonwealth. We said as much in *Kentucky Bar Association v. Shane*, 553 S.W.2d 467 (Ky.1977), wherein we announced that "[t]his Court is not bound by the disciplinary penalties imposed ... in a foreign jurisdiction for the same conduct for which [one] is to answer in Kentucky." "Moreover, SCR 3.435(4)(b) gives this Court sufficient discretion to impose a lesser degree of discipline when and where appropriate."

*Kentucky Bar Association v. Fish*, 2 S.W.3d 786, 787 (Ky.1999). Thus, under SCR 3.435(4)(b), "this Court shall impose the identical discipline *unless* Respondent proves by substantial evidence ... that [the] *misconduct established* warrants substantially different discipline in this State." (Emphasis added). "To [otherwise] give automatic and unquestioning effect to the judgment of a foreign tribunal would be to fail to exercise the discretion vested in this court by our state constitution." *The Florida Bar v. Wilkes*, 179 So.2d 193, 197 (Fla.1965).

In fact, the *Shane* Court *increased* the disciplinary penalty assessed by Ohio from a Private Reprimand to a Public Reprimand. In *Kentucky Bar Association v. Sullivan*, 979 S.W.2d 104 (Ky.1998), the lawyer was *permanently disbarred* by the Ohio Bar. *Id.* at 105. When the Kentucky Bar Association sought "to impose reciprocal discipline pursuant to SCR 3.435," the lawyer in *Sullivan* moved to terminate the proceedings and requested *a one (1) year suspension.* *Id.* at 105. The Kentucky Bar concurred, "agreeing that the charges in [Sullivan] were quite similar to those found in *Kentucky Bar Ass'n. v. Harris*, Ky., 875 S.W.2d 97 (1994)." *Id.* We, in turn, agreed with the reasoning set forth by the Bar and *decreased* the penalty to a one-year suspension. *Id.* Thus, *Sullivan* established that the "misconduct" evaluated under SCR 3.435(4)(b) must be assessed for consistency under similar Kentucky disciplinary actions. In fact, the Bar concedes this in their brief.

Of course, SCR 3.435(4)(b) places the burden of showing this difference upon the Respondent, but once the comparisons are made—they speak for themselves—and they either establish the point, or they do not.

### III. COMPARISON

The reference to "misconduct" in SCR 3.435(2) emphasizes that comparisons should be made of the underlying *conduct*, it is not merely a comparison of the particular disciplinary rules, or discipline, at issue in the two jurisdictions. Here the stipulated evidence was that, "Respondent's conduct was grounded in neglect and poor office procedures, rather than in intentional misconduct." Based on this underlying conduct, the West Virginia Lawyer Disciplinary Board recommended a Public Reprimand since:

A. The Respondent violated a duty owed to the legal system and profession;

B. Respondent's conduct was primarily of a negligent nature;

C. The Respondent's client was not substantially harmed by his misconduct; and;

D. The existence of mitigating factors.

On appeal, however, the West Virginia Supreme Court increased the sanction to a two-year suspension. In this regard, Respondent cites a sampling of misconduct where the West Virginia Bar disciplined its own members with *a two-year suspension, see Committee of Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), *Committee of Legal Ethics of the West Virginia State Bar v. Hobbs*, 190 W.Va. 606, 439 S.E.2d 629 (1993), and *Lawyer Disciplinary Board v. Friend*, 200 W.Va. 368, 489 S.E.2d 750 (1997).

In *Friend*, the attorney paid himself attorney's fees of approximately $520,000, which represented approximately 72% of the estate's corpus. In *McCorkle*, the attorney pled guilty to possession of cocaine and was found to have engaged in improper solicitation of a client using a "runner" who worked at a local hospital. The West Virginia court also found that the attorney

had fabricated evidence and falsely testified before the committee concerning the solicitation allegation. In *Hobbs*, the attorney bribed the presiding Judge in a medical malpractice case with a 4% contingency fee, which was to be paid to the judge's wife. These cases represent quite different "misconduct" than what occurred here.

As to the cases cited by the KBA which allegedly support a two-year suspension for the "misconduct" in this case, they too *are grounded on "misconduct" which is absent here.* In *Kentucky Bar Association v. Geller*, 188 S.W.3d 431 (Ky.2006), the attorney failed to have summons issued for service, resulting in a dismissal of his client's suit outside the applicable statute of limitations. Thereafter, in an obvious attempt to cover up his failure from succeeding counsel, Geller failed to comply with Court orders directing him to produce all of his client's records, at least until his arrest was ordered. In addition, subsequent attempts to further obscure his misconduct required the issuance of an additional warrant for Geller's arrest; nor did he respond to the later Inquiry Commission's charges. Finally, at the time of this Court's imposition of his three-year suspension, *Geller already had an existing two-year suspension for other misconduct.*

In *Kentucky Bar Association v. Keesee*, 939 S.W.2d 877 (Ky.1997), Keesee was found guilty of missing seven different "black lung" hearings in front of the Administrative Law Judge (ALJ) for seven clients. In addition, he was found guilty of making false statements to the ALJ in support of a continuance and subsequent Motion to Withdraw. Keesee told the ALJ that his request was necessary because he was presently involved in a jury trial. The ALJ, however, contacted the trial Judge and found that the trial had been continued and *that Keesee was aware*

*of the continuance prior to the false statement to the ALJ.* Keesee also did not respond to the Inquiry Tribunal charges and at the time of this Court's adjudication, he had a prior private and public reprimand. His suspension was set at two-years.

In *Kentucky Bar Association v. Williams,* 188 S.W.3d 437, 438 (Ky.2006), Williams had represented a client in a criminal trial which resulted in a guilty verdict. Thereafter, he failed to file the Appellant's brief and the Court of Appeals issued the first of several show cause orders as to why the appeal should not be dismissed. Williams never responded. In January 2000, the Court of Appeals dismissed his client's appeal and directed Williams to certify that he had served his client with a copy of the court's order. Williams failed to comply with this order and did not notify his client of the dismissal. This Court then found:

> Between March 2000 and October 2000, Williams ignored numerous orders of the Court of Appeals, including two sanctions of $100, as well as an order incarcerating him for thirty days, with the sentence suspended pending a scheduled October appearance date.

> On October 3, 2000, Williams appeared before the Court of Appeals and acknowledged that had failed to comply with the court's previous orders and had failed to notify [his client] of the dismissal of his appeal. The court sentenced Williams to forty-eight hours in the Franklin County Jail, the imposition of which was suspended for twenty-four hours on the conditions that Williams pay the previously imposed fines totaling $200 and notify [his client] by certified mail of the dismissal.

*Id.*

On another count in the same matter, Williams filed a medical malpractice claim on behalf of another client. Under orders requiring disclosure of experts, Williams was unable to obtain an expert witness to support his client's theory of the case within the time provided. Upon counter motions for summary judgment, Williams failed to notify his client, or respond to any of the motions. He did not appear at the hearings on the motions, whereupon the trial court granted summary judgment in favor of the defendants. *The sanction entered was a 181 day suspension.*

In *Kentucky Bar Association v. Newcomer,* 960 S.W.2d 464, 465 (Ky.1998), the Court of Appeals issued an order requiring Newcomer to show cause why sanctions should not be imposed for failing to timely file a pre-hearing statement. Newcomer failed to appear or comply. Two subsequent orders were issued, the third requiring Newcomer to show cause why he should not be held in contempt. Again, he failed to respond. Newcomer's subsequent failure to file Appellant's brief resulted in dismissal of the appeal.

Count III of the charges against Newcomer involved representation of other clients in front of the Court of Appeals. Their appeal was also dismissed due to Newcomer's failure to respond to a show cause order and to file the brief. Newcomer also did not respond to the charges and notices from the Inquiry Commission, which resulted in an additional Count concerning his failure to do so. Since Newcomer did not "defend or participate whatsoever in any stage of the disciplinary process," *this Court entered an order suspending Newcomer for one-year. Id.* at 465.

In *Kentucky Bar Association v. Hatcher,* 965 S.W.2d 166 (Ky.1998), Hatcher undertook the representation of an estate, but failed to file the inheritance and estate tax return or settle the estate of the decedent, resulting in an assessment against

the estate of $24,000, of which almost $8,000 represented late penalties. "The proof is overwhelming that [Hatcher] has not only failed to communicate with [her executrix], but that she has not even attempted to communicate with [her] for an extended period of time." *Id.* In reviewing the evidence, this Court concluded "that [Hatcher] was wholly unconcerned about the ... estate and as a result did not stir herself to do much of anything on its behalf. Even though Respondent repeatedly testified at the evidentiary hearing that she sent several letters to Spratt requesting Spratt contact her, *copies of these letters have never been produced.*" *Id.* (Emphasis added). Although the opinion indicates that Hatcher's prior disciplinary history was considered, *the extent of the history was not disclosed in the opinion.*[3] Hatcher was suspended for two years.

In *Kentucky Bar Association v. Stern,* 937 S.W.2d 191 (Ky.1997), Stem failed to take any action on behalf of his client in a Bankruptcy matter, failed to accept or return his client's calls and failed to respond to charges issued in that matter by the Inquiry Commission. On an additional count, Stern undertook to represent other parties in defense of a civil action, but again failed to perform any work on their behalf and also avoided their calls and attempted meetings at his office. Finally, Stern disconnected his telephone and closed his office.

With respect to the complaints of another client, Stern again accepted payment for representation and again took no action with respect thereto. He was also charged by the Inquiry Commission with having "knowingly failed to respond to a lawful demand for information from a disciplinary authority," yet he never defended or participated whatsoever in the disciplinary proceedings. This Court suspended Stern for two years.

In *Kentucky Bar Association v. Neal,* 986 S.W.2d 156, 157 (Ky.1999), the disciplinary actions arose from Neal's representation of two separate clients in two unrelated cases. The first count dealt with representation in a home foreclosure action. After an adverse decision, Neal filed a notice of appeal, but failed to file the brief and ignored the Court of Appeal's show cause order regarding such failure. With no response, the Court of Appeals dismissed the appeal. Although Neal and his client attended the same Church and she repeatedly inquired of him about the status of her case, he did not inform her of his failure to file her brief, or the dismissal of her case, until several months later.

In another count, Neal was employed to take over a pending action against his client's former employer. Neal never entered an appearance, nor did he file any pleadings. Thereafter, absent any response from Neal, summary judgment was entered dismissing the complaint. However, at approximately the same time that the motion for summary judgment was pending (without his response), Neal met with his client and discussed her case. "He did not, however, advise her that he was not going to pursue her case further." *Id.* at 157.

Following entry of the summary judgment, his client attempted to retrieve her files, making numerous phone calls which were never returned. Ultimately, the client received one of the three boxes of files she had transferred to Neal. In that box, the client found a letter addressed to her and signed by Neal, but never delivered, advising her that filing a response to

---

**3.** A review of the Court's records, however, indicates that, at the time, she had a prior private admonition (1993), and a public reprimand (1996).

the motion for summary judgment was a "waste of resources" and stating that the defendants' had developed a defense to her action, which made it unlikely that she would prevail. The letter further advised that Neal "would not answer the motion for summary judgment unless she instructed him to do so." *Id.* Yet, after the date of the undelivered letter, the client paid Neal an additional $350 in varying increments, on three separate dates. Neal was suspended for two years.

In *Kentucky Bar Association v. Littleton,* 560 S.W.2d 5 (Ky.1978), Littleton also did not respond to the charges made by the Inquiry Commission. The underlying charge was that Littleton had accepted representation in a Worker's Compensation case, but neglected the case entrusted to him, never having filed the claim. *No communications were ever made by Littleton to his client despite numerous attempts to contact him.* Littleton was suspended for two years.

In stark contrast to these cases, Hardin cites to this Court the case of *Stutsman v. Kentucky Bar Association,* 184 S.W.3d 560 (Ky.2006). The conduct sanctioned is noted therein as:

> Movant was formerly a supervisor in the Criminal Appeals Division of the Department of Public Advocacy. On July 30, 2004, the Kentucky Court of Appeals held Movant in contempt of court in three cases for failing to comply with previous orders of the court and for failure to timely file a brief for the Appellant in each case. The Court of Appeals further referenced six other cases in which Movant disregarded procedural steps in the appellate process and repeatedly missed deadlines, motions, and responses to show cause[ ] orders. Movant was fined $500, and the matter was referred to the KBA for disciplinary proceedings.

The lawyer in *Stutsman did respond to the charges and admitted guilt,* as did Hardin, but unlike Hardin, Stutsman was given a public reprimand.

We are also cited to the case of *Moloney v. Kentucky Bar Association,* 152 S.W.3d 866, 868 (Ky.2005). In *Moloney,* the lawyer failed to file a brief in a criminal appeal. The Court of Appeals then issued a show cause order as to why the appeal should not be dismissed. Moloney failed to respond. Again, on January 24, 2001, the Court of Appeals issued a second show cause order on the same matter. Again, Moloney failed to respond. On March 19, 2001, the Court of Appeals dismissed the appeal and directed Moloney to file "certifications that appellant [Client A] was served with a copy of the January 24, 2001, show cause order, and this order dismissing the appeal. Moloney was provided fifteen days to comply. Moloney neither responded, nor complied with the requirement that he provide the certifications requested." *Id.* at 868 (internal quotation omitted). The Court of Appeals then entered another show cause order imposing a sanction of $150. Although Moloney thereafter wrote the Court a letter apologizing and promising to comply, he did not file the appropriate documentation or provide the certification he indicated he would provide. In fact, Moloney did not inform his client in any manner, but rather, led his client to believe that the appeal was active and did not attempt to correct this impression, even though his client attempted to contact him from June 2001 to June 2003.

Ultimately, Moloney's client found out about the matter when she was ordered to appear for resentencing in the trial court. She was sentenced to five years imprisonment. Later, on her own "pro se" motion to reinstate her appeal, the Court of Appeals, based upon Moloney's failures,

granted her motion and reinstated her appeal. She then obtained other counsel and was released from prison after the reinstatement of her appeal bond.

Once again, like Hardin, the lawyer in *Moloney* did respond to the Inquiry Commission's charges, admitted his guilt and requested a public reprimand. We considered mitigating factors, ultimately holding that "[c]onsidering [Moloney's] absence of a prior disciplinary record, full and free disclosure to the disciplinary board, a cooperative attitude toward the disciplinary proceedings, the full refund of fees to his client and the imposition of other sanctions, a Public Reprimand is the appropriate sanction in this matter." *Id.* at 869.

Finally, in *Bucklew v. Kentucky Bar Association*, 136 S.W.3d 427, 428 (Ky. 2004), Bucklew appeared and responded to the Inquiry Commission's charges. The underlying facts involved a dispute over a twelve-foot easement, which Bucklew won, although a judgment to such effect was never entered. Subsequent thereto, Bucklew's clients purchased an adjacent piece of property, which clouded the legal underpinnings of the previous court decision, still not entered of record. On subsequent motion by the defense to dismiss Bucklew's suit based upon the later acquisition of the adjacent property, Bucklew failed to appear at the hearing. Based upon his failure to appear, the matter was reassigned to the next month. Again, Bucklew did not appear, whereupon, "the trial court ruled that since no one was present to object to the motion, he would sign an order dismissing the case." *Id.* at 428. Bucklew was ultimately charged with "failing to diligently represent [his clients] when he took no steps to obtain the entry of an order reflecting the resolution of the case, did nothing to ensure the defendants acted in accordance with the resolution, and failed to appear at the hearing on the motion to dismiss." *Id.* This Court ordered a public reprimand for Bucklew's conduct.

In accordance with these latter cases, Respondent Hardin cooperated with West Virginia's disciplinary board, even to the point of agreeing to the disciplinary board's stipulations and recommended discipline. In connection with the "misconduct" noted, the West Virginia disciplinary proceedings established that "Respondent's conduct was grounded in neglect and poor office procedures, rather than an intentional misconduct. He exercised poor judgment and made wrong decisions in dealing with the consequences and failing to meet discovery deadlines and being unsuccessful in finding an expert witness." The stipulations also noted that, "[t]he Respondent did not inflict injury to his client, because [his client's] case most likely would have been dismissed before trial, because they were unable to find an expert witness based upon the facts of the case."

Additionally, we note that the imposition of a two-year suspension in this case would be unduly harsh since Hardin's suspension in West Virginia is set to expire on September 13, 2007. Since this opinion is not set to be rendered until April 19, 2007, Hardin would effectively be serving a total of nearly four years in continual suspension (since a two-year suspension in Kentucky would expire on April 19, 2009) for the conduct at hand. Although it is well taken that Hardin has had the privilege of practicing law in Kentucky during his previous year-and-a-half suspension in West Virginia, Hardin's practice has undoubtedly suffered due to the aforementioned suspension and because of the considerable cloud of Hardin's inevitable, albeit substantially delayed, suspension in Kentucky. Moreover, we look with favor upon Hardin's candor and cooperation with our sister state in effecting its discipline process.

## IV. CONCLUSION

When the cases and circumstances are considered in their totality, we find that substantial evidence exists to impose substantially different discipline in this Commonwealth as follows:

**IT IS HEREBY ORDERED:**

1) J. Thomas Hardin is suspended from the practice of law in the Commonwealth of Kentucky for a period commensurate with the remainder of the suspension still to be served in West Virginia, which is 147 days, effective from the date of this order.[4]

2) Under SCR 3.390, Hardin shall notify, in writing, within ten days from the entry of this Opinion and Order, all courts in which he has matters pending and all clients he is currently representing of his inability to provide further legal services and provide the Executive Director of the Kentucky Bar Association with a copy of all such notice letters, or with a certification that he has no active clients, whichever is applicable. To the extent possible, Hardin must immediately cancel and cease any advertising activities in which he is engaged; and

3) In accordance with SCR 3.450, Hardin shall pay all costs associated with these disciplinary proceedings against him, and for which execution may issue from this Court upon finality of this Opinion and Order.

LAMBERT, C.J., CUNNINGHAM, McANULTY, NOBLE, and SCOTT, JJ., concur.

MINTON, J., dissents by separate opinion, with SCHRODER, J., joining that dissent.

ENTERED: April 19, 2007.

/s/ James E. Lambert
    Chief Justice

Dissenting Opinion By Justice MINTON.

I respectfully dissent. By his own admission, Hardin failed to appear at scheduled hearings seven times in one case over a period of approximately one year; and he repeatedly failed to comply with the trial court's discovery orders. Because of this pattern of repeatedly disobeying trial court discovery orders and sanctions, failing to act with diligence in representing his client, and failing to extend professional courtesy toward opposing counsel and the trial court, I do not find that substantially different discipline is warranted in Kentucky. We have punished similar misconduct with similar suspensions in other cases. Naturally, each case will be factually unique; but under these facts, I cannot find that "substantially different discipline" is warranted under Kentucky law. And, in the interest of comity, I would impose discipline identical to that imposed by the Supreme Court of West Virginia.

SCHRODER, J., joins this dissenting opinion.

---

4. Thus, according to our calculation, Hardin's suspension in Kentucky will expire on September 13, 2007, subject only to compliance with SCR 3.510(2).