TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000128-KB

DATE 9-1-15 End Group P.C.

KENTUCKY BAR ASSOCIATION                                MOVANT


V.                          IN SUPREME COURT


RICHARD GROVE WARD                                   RESPONDENT
KBA Member No. 91705


## OPINION AND ORDER

Richard Grove Ward was admitted to practice law in the Commonwealth of Kentucky on April 23, 2007. His bar roster address is 119 East Court Street, Suite 309, Cincinnati, OH 45202, and his KBA number is 91705. The Ohio Supreme Court suspended Ward from the practice of law for one (1) year on January 29, 2015.[1] On March 16, 2015, the Kentucky Bar Association (KBA) filed a petition asking this Court to order Ward to show cause why we should not impose reciprocal discipline and, in the event we found cause lacking, to impose that discipline pursuant to Supreme Court Rule (SCR) 3.435. On May 14, 2015, we issued a show cause order, and on June 3, 2015, Ward filed a response objecting to the imposition of reciprocal discipline.

Pursuant to SCR 3.435(4), an attorney may contest the imposition of reciprocal discipline by proving with substantial evidence: "(a) a lack of

---

[1] *Disciplinary Counsel v. Ward*, Slip Opinion No. 2015-Ohio-237.

jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that misconduct established warrants substantially different discipline in this State." Having reviewed Ward's response to our show cause order, we conclude that he has failed to establish either. Therefore, we grant the KBA's petition to impose reciprocal discipline.

## I. BACKGROUND.

Ward's Ohio discipline arose from his handling of various trusts and a real estate transaction. We briefly set forth below what occurred.

### A. The Ohio Supreme Court Opinion

#### 1. The Trusts.

The Ohio Supreme Court set forth the following set of facts. Ward's father, Richard H. Ward (Dick Ward), was a close friend, confidant, and attorney for John F. "Bud" Koons (Bud Koons), principal owner of a successful bottling company associated with Pepsi, Central Investment Corporation (the Corporation). Dick, who formed the law firm Drew & Ward, served on the board of directors of the Corporation, formed 25 trusts for Koons and his family, and served as trustee for at least 11 of those trusts.

In 1976, Bud Koons's parents formed a trust for the benefit of their grandchildren and divided that trust into two shares. Share A was for the benefit of Bud Koons's family and Share B was for the benefit of the family of Bud Koons's sister, Betty Lou Cundall. The original corpus of the trust consisted of shares in the Corporation, and Bud Koons served as trustee of the trust. In 1984, the Corporation redeemed the shares of stock from Share B

2

and Bud Koons invested the proceeds. The Corporation did not redeem the shares of stock from Share A. In 1992, the trust was divided into two trusts, with Share A becoming Trust A, which continued to benefit the Koons family, and Share B becoming Trust B, which continued to benefit the Cundall family. Bud Koons resigned as trustee of Trust A and was replaced by Dick Ward, another attorney, and Jeffrey Koons. Bud Koons remained trustee of Trust B.

In 2004, Ward joined Drew & Ward as a partner, and he assisted Dick with handling Bud Koons's business and personal interests. In January 2005, the Corporation sold its business to PepsiAmericas, Inc. for approximately $400 million and Central Investment LLC (the LLC) was formed to handle the assets from the sale. Initially, Dick was placed on the board of managers of the LLC but, at Bud Koons's request, Dick resigned from that position and from his position as trustee of Trust A. By the end of February 2005, Dick and Drew & Ward had essentially ended the attorney-client relationship with respect to Bud Koons and his interests.

In March 2005, Bud Koons died, and, pursuant to the terms of Trust B, Dick became a co-trustee of that trust. Thereafter, Dick asked Ward to review Trust B to determine how its assets should be distributed. In conducting that review, Ward had access to the law firm's records regarding the trusts as well as to the accountant for the trusts. As a result of his review, Ward believed that Bud Koons had not properly administered Trust B. Ward suggested to his friend and Trust B beneficiary, Michael Cundall, that the Trust B beneficiaries

3

might want to consider suing Bud Koons's estate. Michael Cundall agreed and asked Ward to represent Trust B.

After agreeing to represent Michael Cundall, Ward contacted the local bar association's ethics hotline to determine if there would be a conflict of interest. Following his discussion, Ward concluded that there was no reason for him to disqualify himself. Ward then discussed the possible conflict with Michael Cundall and the members of Drew & Ward and went forward with the lawsuit. The complaint alleged that Bud Koons violated his fiduciary duty by coercing the Trust B beneficiaries (the Cundalls) to sell their shares of the Corporation for less than their true value. The Supreme Court of Ohio ultimately determined that the suit was not timely filed and ordered the trial court to dismiss it. A legal malpractice action against Ward, Dick, and Ward & Drew followed and the parties ultimately settled for $5 million.

Following an investigation and hearing, the Supreme Court of Ohio found that Ward, through his father and Drew & Ward, had access to confidential documents related to not only Trust B but to many of Bud Koons's personal and business interests. Through those documents, Ward obtained confidential information which he was able to use in the lawsuit he filed against Bud Koons's estate. The Court found that Ward's actions violated: DR 4-101(B)(2), which prohibits a lawyer from knowingly using the confidences or secrets of a client to that client's disadvantage; DR 4-101(B)(3) which prohibits using client confidences for the advantage of the lawyer or a third party; DR 5-101(A)(1), which prohibits a lawyer from accepting employment when his judgment may

4

be affected by his own financial, business, property, or personal interests;[2] and DR 1-102(A)(6), which prohibits a lawyer from engaging in conduct adversely reflecting on his fitness to practice law.

## 2. *The Real Estate.*

On July 30, 2003, Michael Cundall's wife, Ann, sold a house. Ward testified that he attended the closing and accepted the proceeds as a qualified intermediary for purposes of effectuating a like-kind exchange. Following the closing, Ward deposited the funds into his trust account. On August 1, 2003, Ward transferred $10,000 of the sale proceeds to Michael Cundall and then loaned himself the remainder of the proceeds, which he invested in his personal securities account. At some point Michael Cundall asked Ward for the balance of the proceeds, which Ward paid with 5% interest.

Ann testified that she did not know what a like-kind exchange was and that she had never had any intention of participating in one. Furthermore, she stated that she had never told Ward to invest the proceeds of the sale. Michael Cundall's testimony was essentially the same as his wife's. Ward provided evidence to the contrary.

The Board of Commissioners found that Ward's testimony was not credible, noting in particular that Ward did not have a written agreement, which is necessary to act as a qualified intermediary. Based on that finding, the Board found that Ward violated DR 1-102(A)(4) and 9-102(A), which require

---

[2] The Court noted that Ward was angry that his father had been forced out of Bud Koons's business affairs, and he filed suit to "gain satisfaction" and to right what he perceived to be a wrong.

5

a lawyer to hold a client's property separate from the lawyer's and that he violated DR 1-102(A)(6).

### 3. The Sanction.

Based on its finding that Ward acted with selfish motive, mitigated by his history of no prior discipline, and that he made timely restitution, the Board recommended a one-year suspension from the practice of law. The Supreme Court agreed with the Board's recommendation, although not with all of its findings.

## B. Ward's Response to the Show Cause Order.

Ward argues that we should not impose reciprocal discipline because "there was fraud in the out-of-state proceeding" and the Ohio discipline is substantially different than Kentucky's would be. We address each in turn.

As to the matter of fraud regarding the trusts, Ward's argument is simply that the Ohio Supreme Court got it wrong by, among other things: (1) overemphasizing the length of time Drew & Ward and Dick represented Bud Koons and his interests; (2) failing to recognize that Bud Koons's alleged self-dealing took place without Dick's or Ward's knowledge; (3) failing to sufficiently recognize that, following the sale of CIC, a substantial amount money had to be distributed to various individuals and trusts and Dick, with Ward as his legal counsel, was responsible for verifying the accuracy of the distribution of those funds; (4) failing to recognize the red flags raised by Bud Koons's failure to personally communicate with Dick about changes to the trusts made just weeks before Bud Koons died; (5) failing to consider or at least downplaying

6

Ward's contention that he learned of the discrepancies between Trust A and Trust B from the beneficiaries, not from confidential client materials; (6) stating that Dick initially "acquiesced to his role as a co-successor-trustee of Trust B," but then declined to serve, when Dick actually accepted his role as trustee then resigned; (7) failing to recognize that, because he had accepted his role as trustee of Trust B, Dick had responsibilities to the trust and its beneficiaries; (8) failing to recognize that an attorney from the Ohio Ethics Hotline testified that Ward was "trying to do the right thing" by seeking advice about any potential conflict; (9) underemphasizing the fact that the settlement of the malpractice action involved not just Dick and Ward but the law firm; (10) misinterpreting its own ethical rules and failing to recognize how those rules conflict with the legal obligations of a trustee and counsel for a trust or trustee; and (11) engaging in pseudo-judicial psychoanalysis when it determined that Ward acted in order to gain satisfaction because Dick had been fired by Bud Koons.

Presumably, the Ohio Supreme Court could have chosen to believe Ward's representation of the facts. Furthermore, it presumably could have adopted Ward's interpretation of Ohio's ethics code and his interpretation of how that code should interact with trust law. However, the fact that the Ohio Supreme Court did not do so did not constitute fraud.

As to the matter of fraud regarding the real estate transaction, Ward argues that the Cundalls' testimony, which occurred 9 years after the sale, was "knowingly false - or at least recklessly false." Furthermore, he argues that his

7

version of events is supported by documents indicating that he had been asked to assist with and did assist with a like-kind exchange; that he initially deposited the money from the sale in his IOLTA account to effectuate the transfer of the $10,000 to Michael Cundall; and that he invested the remaining money from the sale of Ann's house in order to protect it. According to Ward, because he was acting as an intermediary rather than as an attorney at the closing, he was not governed by the rules regarding attorney escrow accounts. Although Ward asserts that the Cundalls' testimony amounted to fraud, the same testimony was available to the Supreme Court of Ohio and the Court found them to be more credible than Ward. Therefore, while Ward and the Cundalls have different memories of what transpired with regard to the sale of Ann's house, that does not constitute fraud.

As to the discipline imposed, Ward argues that under Kentucky law a one year suspension is excessive.

> Pursuant to Section 116 of the Kentucky Constitution, "the Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar." For this reason, we have never given a sister state "carte blanche" authority to exercise our constitutional disciplinary prerogatives within the confines of this Commonwealth. We said as much in *Kentucky Bar Association v. Shane*, 553 S.W.2d 467 (Ky. 1977), wherein we announced that "[t]his Court is not bound by the disciplinary penalties imposed . . . in a foreign jurisdiction for the same conduct for which [one] is to answer in Kentucky." "Moreover, SCR 3.435(4)(b) gives this Court sufficient discretion to impose a lesser degree of discipline when and where appropriate." *Kentucky Bar Association v. Fish*, 2 S.W.3d 786, 787 (Ky. 1999).

8

*Kentucky Bar Ass'n v. Hardin,* 219 S.W.3d 188, 190 (Ky. 2007), *as modified* (Apr. 25, 2007). Thus, we must determine what the appropriate discipline would be for Ward had he violated the equivalent Kentucky ethical rules.

The Supreme Court of Ohio ultimately found that Ward violated the following: DR 4-101(B)(2) - using the confidences or secrets of a client to the disadvantage of a client - which is substantially the same as our Rules of the Supreme Court (SCR) 3.130(1.6)(a) and 3.130(1.8)(b); DR 4-101(B)(3) - using the confidences or secrets of a client for the advantage of the lawyer or a third person without consent of the client - which is substantially the same as SCR 3.130(1.6)(a) and 3.130(1.7)(a)(2); DR 5-101(A)(1) - accepting employment if the exercise of the lawyer's professional judgment will be or reasonably may be affected by the lawyer's financial and personal interests - which is similar to SCR 3.130(1.7); DR 1-102(A)(6) - engaging in conduct that adversely reflects on the lawyer's fitness to practice law - which is similar to SCR 3.130(8.4); DR 1-102(A)(4) - engaging in conduct that involves fraud, dishonesty, deceit, or misrepresentation - which is substantially the same as SCR 3.130(8.4)(c)); and DR 9-102(A) - failing to hold client funds separately from personal funds - which is substantially the same as SCR 3.130(1.15)(a).

The violations fall within two general categories - co-mingling client and personal funds and violating client confidences. This Court has imposed sanctions for co-mingling funds ranging from a public reprimand (*Rose v. Kentucky Bar Ass'n,* 398 S.W.3d 432 (Ky. 2013)) to a suspension of 181 days (*Kentucky Bar Ass'n v. Francis,* 439 S.W.3d 750, 753 (Ky. 2014)). This Court

9

has imposed sanctions for violating client confidentiality ranging from a public reprimand (*Kentucky Bar Ass'n v. Hines,* 399 S.W.3d 750, 773 (Ky. 2013)) to a two-year suspension (*Kentucky Bar Ass'n v. Newcomer,* 977 S.W.2d 20, 21 (Ky. 1998)). Therefore, we hold that the one-year suspension imposed by the Supreme Court of Ohio is not unduly harsh.

However, we note that Ward will have served 203 days of his Ohio suspension by the time this opinion is rendered on August 20, 2015, leaving 162 days to serve. If we were to run our one-year suspension from August 20, 2015 to August 20, 2016, Ward would serve a total suspension of 568 days, a suspension we believe would be unduly harsh. We recognize that Ward has had the opportunity to continue practicing law in Kentucky while suspended in Ohio. Nevertheless, his practice has no doubt suffered because of that suspension and will continue to suffer when this suspension goes into effect. Furthermore, we note that Ward voluntarily re-paid the Cundalls and has no history of prior disciplinary actions. In light of the preceding, Ward is suspended from the practice of law for a period of one-year, to run concurrently with the Ohio suspension for an effective suspension of 162 days.

IT IS HEREBY ORDERED:

1)      Richard Grove Ward is suspended from the practice of law in the Commonwealth of Kentucky for a period of one-year to run concurrently with his Ohio suspension for an effective Kentucky suspension of 162 days.

2)      Under SCR 3.390, Ward shall notify, in writing, within ten days from the entry of this Opinion and Order, all courts in which he has matters

pending and all clients he is currently representing of his inability to provide further legal services and provide the Office of Bar Counsel with a copy of all such notice letters, or with a certification that he has no active clients, whichever is applicable. To the extent possible, Ward must immediately cancel and cease any advertising activities in which he is engaged;

3) In accordance with SCR 3.450, Ward shall pay all costs associated with these disciplinary proceedings against him, and for which execution may issue from this Court upon finality of this Opinion and Order; and

4) Ward shall comply with the provisions of SCR 3.510 prior to reinstatement.

All sitting. All concur.

ENTERED: August 20, 2015.

_____
CHIEF JUSTICE

11