TO BE PUBLISHED
FINAL
DATE 5/9/17 Kim Redmon, DC

# Supreme Court of Kentucky

## 2017-SC-000039-KB

KENTUCKY BAR ASSOCIATION                                          APPELLANT

V.                               IN SUPREME COURT

CHRISTOPHER DAVID WIEST                                          APPELLEE

## **OPINION AND ORDER**

On December 19, 2016, the Supreme Court of Ohio suspended

Christopher David Wiest[1] for two years, with the second year stayed on the

condition he engage in no further misconduct. Thereafter, the Kentucky Bar

Association (KBA) filed a petition with this Court asking that we impose

reciprocal discipline under SCR 3.435(4). We ordered Wiest to show cause, if

any, why we should not impose said discipline. Wiest responded to our show-

cause order; however, we hold that he failed to prove by substantial evidence

that the grounds set forth in SCR 3.435(4)(a) and (b) were met in his case.

Because Wiest failed to show sufficient cause, this Court hereby suspends him

---

[1] Wiest was admitted to the practice of law in the Commonwealth of Kentucky
on May 2, 2005. His bar roster address is 25 Town Center Blvd. Ste. 104, Crestview
Hills, Kentucky 41017. His KBA number is 90725.

from the practice of law, as consistent with the order of the Ohio Supreme Court.

## I. BACKGROUND

Wiest represented Stanley Works in matters which typically concerned the company's proposed mergers, acquisitions, and divestitures. During this representation, Wiest personally purchased 35,000 shares of InfoLogix stock—a company Wiest knew Stanley considered acquiring. In the course of his representation of Stanley, Wiest received an email indicating that his client was willing to pay $4.75 per share for the InfoLogix stock. He had never heard of the company before this email. He understood that Stanley's interest in acquiring InfoLogix was confidential until the acquisition became public later that year.

InfoLogix announced in October 2010 that its stock had been delisted from the NASDAQ stock market. Wiest learned of this development and purchased 10,000 shares of the stock using his 401k account. Days later, he purchased another 25,000 shares. All of these purchases were at amounts well under what he knew Stanley would be paying if the acquisition went through (ranging from $2.84 to $1.95). He did not communicate with Stanley at any point about his purchase of the stock. He eventually sold 13,510 of his shares for $1.35 per share, taking a loss of almost $18,000. At that point, he was left with 21,490 shares.

2

In December, Stanley announced it was acquiring InfoLogix and paid $4.75 per share for its stock. Wiest contacted an attorney with experience in dealing with the Securities and Exchange Commission (SEC) for advice. On advice of that counsel, Wiest sold his remaining InfoLogix stock for a pretax profit of more than $56,000. The SEC issued a subpoena compelling Wiest's production of Stanley's confidential information. Wiest provided Stanley's confidential information to the SEC without communicating with Stanley regarding the investigation.

Wiest was initially charged with violating four ethical rules. However, two of these charges were dismissed by the Ohio Board of Professional Conduct panel assigned to his case and another was later dismissed by the Ohio Supreme Court. Specifically, the panel dismissed one charge against Wiest for providing confidential client information to the SEC without Stanley's consent and another charge involving his use of Stanley's confidential information about InfoLogix for his personal stock trading without seeking Stanley's informed consent. The panel dismissed these charges on due-process grounds, based on its finding that Wiest was not given adequate notice of the charges. The Ohio Supreme Court upheld the panel's dismissal of these two charges. That Court also dismissed another charge related to Wiest's disclosure of Stanley's financial information to the SEC without the company's consent on due process grounds.

With all other charges against Wiest dismissed, the Ohio Supreme Court considered the sole remaining allegation—that he had violated Ohio Rule of Professional Conduct 8.4(c) (which is comparable to our SCR 3.130-8.4(c)) for "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Under this charge, the Cincinnati Bar Association, which filed the complaint, asserted that Wiest used confidential information from his representation of Stanley in his purchase of InfoLogix stock and did not consult with Stanley before he did so.

In responding to this charge, Wiest insisted that his purchase of InfoLogix stock was not based on any confidential information he obtained through his representation of Stanley. He also stated that, in his personal opinion, Stanley did not plan to go ahead with the acquisition. The panel, however, was unconvinced and found that he had engaged in dishonest and deceitful behavior through using Stanley's confidential information for personal monetary gain and failing to obtain Stanley's or his firm's informed consent before doing so. On appeal to the Ohio Supreme Court, Wiest argued that there was not clear and convincing evidence that he went forward with the purchase based on Stanley's confidential information obtained through his representation of the company.

In finding that Wiest violated the rule in question, the Ohio Supreme Court stated that the parties "misapprehend[ed] the true nature of his

4

dishonesty and deceit and overlook[ed] Wiest's profound failure to appreciate what is perhaps one of the most fundamental of his professional obligations—his duty to communicate openly with his client." *Cincinnati Bar Assn. v. Wiest,* No. 2016-0263, 2016 WL 7386245, at *5 (Ohio Dec. 19, 2016). That Court further pointed out that while the charges "focused primarily on Wiest's use of Stanley's confidential information, they also alleged that he failed to disclose his actions to his client (or his firm) or to seek his client's informed consent to his actions." *Id.* It went on to explain that "it is Wiest's repeated concealment of information that he was duty-bound to communicate to his client from which we infer his intent to engage in dishonesty, fraud, deceit, or misrepresentation." *Id.* at *7. Ultimately, the court imposed a greater sanction than that recommended by the panel and suspended Wiest from the practice of law in Ohio for two years, with the second year stayed on the condition that he engage in no further misconduct.

In response to this Court's show cause order, Wiest asserts that there was fraud in the Ohio proceedings and that any misconduct warrants a substantially different sanction than that imposed in Ohio. For the following reasons, we disagree and impose reciprocal discipline under SCR 3.435(4).

## II. ANALYSIS

If an attorney licensed to practice law in this Commonwealth receives discipline in another jurisdiction, SCR 3.435(4) generally requires this Court to impose identical discipline. Subsections (4)(a) and (b) read, in pertinent part: "(4) . . . this Court shall impose the identical discipline unless Respondent

5

proves by substantial evidence: (a) a lack of jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that misconduct established warrants substantially different discipline in this State." Furthermore, SCR 3.435(4)(c) requires this Court to recognize that, in the absence of the circumstances set forth in subsections (a) and (b), "a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State."

## A. Fraud

Wiest first takes issue with the Ohio Supreme Court's statement that "he remained silent upon learning that his client was moving forward with its acquisition of that company and once again remained silent when the SEC issued a subpoena compelling him to produce his client's confidential information." *Id.* He asserts the Court should not have relied upon anything related to the SEC, as it had previously dismissed the SEC-related charges for lack of notice. Wiest contends that this basis for the Ohio Supreme Court's holding amounts to a due process violation—and, therefore, fraud. We disagree.

While Wiest is correct that the phrase "remaining silent" does not appear in the complaint issued against him, this was merely the Ohio Supreme Court's articulation of the charges. In fact, the complaint indicated that Wiest's "undisclosed use of confidential information . . . breached the duties of loyalty and confidentiality which he owed to his client." That Court merely relied on

6

his continued failure to communicate with his client as grounds for the ethical violation of engaging in dishonesty, fraud, deceit, or misrepresentation.

Wiest also makes much ado about the fact that many of his actions were based on the advice of his counsel. He insists that, had he known that his actions after selling the stock were at issue, his attorney could have provided testimony showing that those actions conformed with his attorney's advice and, therefore, did not violate the ethical rule. Wiest did not consult an attorney until after he purchased the InfoLogix stock and Stanley announced it was acquiring the company. Therefore, this argument is irrelevant to the Ohio Supreme Court's evaluation of Wiest's earlier actions. This argument is totally irrelevant to our consideration since it fails to support a claim that the Ohio proceedings were in some way fraudulent.

Wiest concedes that there is no case law to which he can point equating a due-process violation with fraud. Therefore, this is not the proper forum for Wiest to argue that the Ohio Supreme Court violated his due process rights. Wiest filed notice in this Court that he was recently granted an extension of time in which to file a writ of certiorari with the United States Supreme Court. He is obviously free to seek relief in the federal court system for any such due process violation—but not through the attorney disciplinary process of this Commonwealth. We find our recent case *Kentucky Bar Association v. Ward*, 467 S.W.3d 785 (Ky. 2015), instructive. There, the Ohio Supreme Court did not believe Ward's presentation of the facts or adopt his interpretation of the

7

Ohio ethics code and how it should interact with the law. We held that this did not constitute fraud for purposes of our rule. *Id.* at 788.

Here, Wiest simply disagrees with the Ohio Supreme Court—just as in *Ward.* This disagreement does not rise to the level of fraud. The Ohio Supreme Court had the opportunity to view all of the evidence Wiest now directs us to. We are not tasked with determining whether we would have made a different decision—only with determining whether the decision reached by that Court was fraudulent.

Wiest also alleges that the Ohio court did not base its ruling on sufficient evidence. He again relies on the fact that he was following the advice of his attorney concerning the SEC investigation. We point out that the Ohio Supreme Court did not base its ruling solely on Wiest's lack of communication to Stanley concerning the SEC investigation, but rather, on his general failure to communicate with his client concerning his purchase of the InfoLogix stock. Further, Wiest insists that his testimony concerning his alleged belief that Stanley did not plan on going ahead with the acquisition should have garnered more weight. The Ohio Supreme Court was in the best position to view the evidence in this case; our role here, again, is not to reweigh that evidence, and we cannot say that Court's ruling constituted fraud.

Wiest admits that he made a mistake in failing to communicate with his client, but insists that he violated a different rule than that for which he was charged and found to have violated. We point again to our holding in *Ward.*

8

The mere fact that Wiest disagrees with our sister state's high court does not amount to fraud.

SCR 3.435(4)(c) requires this Court to recognize that, in the absence of the circumstances set forth in subsections (a) and (b), "a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State." Therefore, insofar as we hold that the Ohio proceedings were not fraudulent, the Ohio Supreme Court's final adjudication establishes the misconduct in this Commonwealth for purposes of this reciprocal disciplinary action.

## B. Sanction

Wiest insists that his misconduct warrants a substantially different sanction under SCR 3.435(4)(b). He directs us to a number of cases in which we have imposed different sanctions than those imposed by the issuing state in our reciprocal-discipline cases.[2] We point out, however:

> SCR 3.435(4)(b) only gives the Court discretion to impose a lesser degree of discipline "when and where appropriate." *Kentucky Bar Ass'n v. Fish*, 2 S.W.3d 786, 787 (Ky.1999). For example, the imposition of substantially different discipline may be appropriate in situations where the discipline is based on a violation of a foreign jurisdiction rule of professional conduct which has no corresponding rule in the Commonwealth. Such is not the case here as IPCR 1.4(b) is identical to the corresponding Kentucky rule, SCR 3.130–1.4(b), and IPCR 5.6(a) is also identical to its Kentucky counterpart, SCR 3.130–5.6(a).

---

[2] Wiest complains about the Ohio Supreme Court using—as an aggravating factor—his non-disclosure of SEC investigation to Stanley. We disagree with Wiest's argument as to the aggravator for the same reasons enunciated above.

9

*Kentucky Bar Ass'n v. Truman*, 457 S.W.3d 325, 327 (Ky. 2015). As in *Truman*, the rules at issue here in Ohio and Kentucky mirror one another.

It is also true that we may, at our discretion, impose different discipline when to do otherwise would be inconsistent with our case law. Given that Wiest used confidential information to engage in activities for his own gain and failed to communicate with his client concerning any of those activities, we choose not to exercise that discretion. Therefore, we impose discipline consistent with that issued by the Ohio Supreme Court. Wiest asks that we run our discipline concurrently with his Ohio discipline—and that we choose to do.

### III. ORDER

Having failed to show sufficient cause, it is hereby ORDERED as follows:

1. Wiest is suspended from the practice of law in Kentucky for a period of two years, with the second year stayed on the condition that he engage in no further misconduct, to run concurrently with his Ohio suspension;

2. Under SCR 3.450, Wiest is directed to pay the costs associated with this proceeding, if any, for which execution may issue from this Court upon finality of this Opinion and Order.

3. Under SCR 3.390, Wiest shall, within ten days from the entry of this Opinion and Order, notify all Kentucky clients, in writing, of his inability to represent them; notify, in writing, all Kentucky courts in which he has matters pending of his suspension from the

10

practice of law; and furnish copies of all letters of notice to the Office of Bar Counsel of the KBA. Furthermore, to the extent possible, Wiest shall immediately cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: April 27, 2017

CHIEF JUSTICE

11